IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| ALMA COMMUNICATIONS COMPANY, et al., | ) ) ) |
| Plaintiffs, | ) ) ) Case No. 05-4358-CV-C-NKL |
| v. | ) ) |
| MISSOURI PUBLIC SERVICE COMMISSION, et al., | ) ) ) |
| Defendants. | ) ) |

ORDER

Pending before the Court are Alma Communication Company, et al.'s ("Plaintiffs") Motion for Summary Judgment [Doc. # 17] and Defendant T-Mobile USA, Inc.'s ("T-Mobile") Motion for Summary Judgment [Doc. # 20]. For the reasons set forth below, Plaintiffs' Motion will be denied and T-Mobile's Motion will be granted.

**I.    Introduction**

Plaintiffs are appealing an October 6, 2005, arbitration decision by the Missouri Public Service Commission ("the Commission") which determined that local telephone companies are required to pay reciprocal compensation to wireless phone companies for calls from a local landline phone to a mobile phone even if the connection was made by a

1

third-party long-distance company. Plaintiffs and their *Amici*[1] argue that the statutes and regulations requiring reciprocal compensation do not apply to calls in which the local company connects to a wireless customer through an intermediary long distance carrier because such three-party calls are compensated under a different, mutually exclusive regulatory scheme. The Commission and T-Mobile counter that the number of parties involved is not the issue, but rather whether the call originates and terminates within the same relevant geographical area. Resolution of this issue turns on an interpretation of federal communications law and the supporting regulations promulgated by the FCC.

    A.    **Nomenclature**

As in any case involving an interpretation of statutory or regulatory language, it is important to clarify terms. Plaintiffs and their *Amici* are Local Exchange Carriers ("LECs"), what one commonly thinks of as the local phone company providing traditional landline phone service to a private residence or business establishment. LECs may be either Incumbent ("ILECs"), the original local phone companies resulting from the break up of Ma Bell in the 1980s; or they may be Competitive ("CLECs"), newcomers allowed to compete with the ILECs by the Telecommunications Act of 1996, 47 U.S.C. §§ 151-614. An LEC typically serves a small area using a few local exchanges (the first three digits of a seven-digit phone number), within which the customer need not dial a 1+ before dialing the seven-digit number.

---

[1] The Missouri Small Telephone Company Group, a consortium of local telephone companies, received leave from the Court to file an *amicus curiae* brief as the Commission's decision has had a direct impact on their operations and finances.

Before the Telecommunications Act of 1996, all the customers in a given area were served by the same ILEC, so all calls between customers within the area would be connected by the ILEC itself. With the advent of CLECs, the two customers at either end of the call were no longer necessarily served by the same LEC. Thus, the LEC served by the caller was now required to connect to the LEC of the person called. Since both LECs have costs associated with connecting the call, Congress required LECs to enter into Reciprocal Compensation Arrangements in which they compensate each other for calls made between their customers. *See* 47 U.S.C. § 251(b)(5).

When an LEC customer calls outside the area, what one would traditionally think of as a "long-distance" call, there may be no direct interconnection between the LEC of caller and the LEC of the person called. In that case, the call is routed through a "long-distance" company, like AT&T or Sprint, chosen in advance by the dialing customer as their long distance carrier. These long-distance companies are called Interexchange Carriers ("IXCs") in the jargon of telecommunication regulations. When a long distance call is made between two traditional landline customers, the dialing customer's LEC transfers the call to that customer's IXC, who in turn transfers it to the LEC of the call's recipient for connection. In such cases, the LECs are not paid through reciprocal compensation arrangements since neither LEC bills the customer for the call. Instead, both LECs are paid through "access compensation" by the IXC, who bills the dialing customer and then compensates both the dialer's LEC for originating the call and the recipient's LEC for terminating it.

3

The compensation regime may be complicated further if one of the parties to the call is using a cell phone instead of a landline. "Wireless" customers go through a Commercial Mobile Radio Service ("CMRS") instead of an LEC. If the landline customer's LEC is able to connect directly to the wireless customer's CMRS, then both companies must enter into a reciprocal compensation agreement as provided by 47 U.S.C. § 251(b)(5). If the landline customer and the wireless customer are in different Major Trading Areas[2] ("MTAs"), the calls are connected through an IXC like any other long-distance call and are not subject to reciprocal compensation.

All parties to the present litigation agree as to the compensation regimes governing the foregoing examples. Where they differ, and what the Court must decide, is whether calls *from* an LEC customer *to* a CMRS customer, both of whom are within the same MTA, are subject to reciprocal compensation even when the LEC routes the call through the dialing customer's IXC.

### B. Procedural History

This case began in negotiations between Plaintiff ILECs and Defendant T-Mobile to fashion Reciprocal Compensation Arrangements as required by 47 U.S.C. § 251(b)(5). The parties were not able to agree on all aspects of the Arrangement so each of the Plaintiffs filed petitions for arbitration with the Commission under 47 U.S.C. § 252. The

---

[2]MTAs are large geographical divisions contemplated by the regulations. Most of Missouri, except for a few counties in the extreme northeast and southeast corners of the state, fall into either the St. Louis MTA or the Kansas City MTA.

dispute was arbitrated and the decision of the arbitrator was largely adopted by the Commission in its Arbitration Report of October 6, 2005.

The only aspect of the Commission's Arbitration Report that is on appeal before this Court is the Commission's finding that the Petitioners were required to provide reciprocal compensation to T-Mobile for landline-to-mobile intraMTA calls even when connected by IXC. The Commission explained its decision as follows:

> The Commission has only that authority which the Congress has expressly delegated to it. The obligation to apply federal law applies even if state law precedent differs from federal law. The Eighth Circuit has stated: "We must defer to the FCC's view . . . . The new regime for regulating compensation in this industry is federal in nature, and while Congress has chosen to retain a significant role for the state commissions, the scope of that role is measured by federal, not state law." . . .
>
> . . . As local exchange carriers, Petitioners have the federal statutory "duty to establish reciprocal compensation arrangements for the transport and termination of telecommunications." FCC implementing rules, affirmed on appeal, define the scope of this duty. Specifically, FCC Rule 51.701 provides in relevant part:
>
>> (a) The provisions of this subpart apply to reciprocal compensation for transport and termination of telecommunications traffic between LECs and other telecommunications carriers.
>>
>> (b) Telecommunications traffic. For purposes of this subpart, telecommunications traffic means:
>>
>> * * *
>>
>> (2) Telecommunications traffic exchanged between a LEC and a CMRS provider that, at the beginning of the call, originates and terminates within the same Major Trading Area, as defined in Sec. 24.202(a) of this chapter.

5

> Although federal appellate courts have held that the "mandate expressed in these provisions is clear, unambiguous, and on its face admits of no exceptions," Petitioners nonetheless ask the Commission to create a new exception. Specifically, they claim that they should be excused from paying reciprocal compensation for intraMTA traffic they deliver to interexchange carriers ("IXCs"). But the Commission may not rewrite or ignore FCC rules.

October 6, 2005, Arbitration Report.

### C. Standard of Review

Because this appeal presents a purely legal issue involving the Commission's interpretation of federal law, both parties agree that this Court should review the Commission's interpretation of Federal law *de novo*. *Qwest Corp. v. Koppendrayer,* 436 F.3d 859, 863 (8th Cir. 2006); *Atlas Tel. Co. v. Oklahoma Corp. Comm'n*, 400 F.3d 1256, 1262 (10th Cir. 2005); *Southwestern Bell Tel. Co. v. Apple*, 309 F.3d 713, 717 (10th Cir. 2002).

## II. Discussion

The Telecommunications Act of 1996 ("the Act") imposes upon all telecommunications carriers (both LECs and CMRSs) a duty to interconnect their networks either directly or indirectly with the facilities and equipment of other telecommunications carriers. 47 U.S.C. § 251(a). The act also imposes upon LECs in particular a duty "to establish reciprocal compensation arrangements for the transport and termination of telecommunications." *Id.* § 251(b)(5). To implement this mandate, the FCC promulgated rules requiring "reciprocal compensation for transport and termination

6

of telecommunications traffic between LECs and other telecommunications carriers." 47 C.F.R. § 51.701(a). The obligation to pay reciprocal compensation applies to both:

> (1) Telecommunications traffic exchanged between a LEC and a telecommunications carrier other than a CMRS provider, except for telecommunications traffic that is interstate or intrastate exchange access, information access, or exchange services for such access; . . . [and]
>
> (2) Telecommunications traffic exchanged between a LEC and a CMRS provider that, at the beginning of the call, originates and terminates within the same Major Trading Area, as defined in § 24.202(a) of this chapter.

*Id.* § 51.701(b)(1)-(2).

T-Mobile and the Commission argue that the calls at issue in the present case are governed by the latter of these two subsections, as they are "telecommunications traffic exchanged between a LEC and a CMRS provider that, at the beginning of the call, originates and terminates within the same Major Trading Area." Consequently, the calls are subject to the reciprocal compensation duty, irrespective of whether they are connected through an IXC, so long as they originate and terminate within the same MTA.

Plaintiffs disagree. They argue that calls made by their customers to T-Mobile's customers, even within the same MTA, are not "exchanged between a LEC and a CMRS provider" because they are first handed off to the LEC customer's IXC. Plaintiffs in fact argue that the IXC originates the call by accessing the Plaintiffs' network. Therefore, long distance access rules apply to this situation and not reciprocal compensation rules.

### A. *Atlas Tel. Co. v. Oklahoma Corp. Comm'n*

There is no Eighth Circuit precedent on this question; however, the Tenth Circuit has decided a case under these same regulations with facts nearly identical to those before

7

this Court. *See Atlas Tel. Co. v. Oklahoma Corp. Comm'n*, 400 F.3d 1256 (10th Cir. 2005). In *Atlas*, several Oklahoma LECs and CMRS providers had attempted to negotiate interconnection agreements with each other that allowed, but did not require, CMRS providers to establish physical connections between their networks and the LEC networks in the same geographical area. *Id.* at 1260. If they opted not to establish physical connections, the CMRSs and LECs could instead connect their customers through an IXC. *Id.* The negotiations broke down over the appropriate means to handle compensation for the IXC-transferred calls. *Id.* The CMRS providers turned to the Oklahoma Corporation Commission ("OCC") to arbitrate the dispute, as provided under 47 U.S.C. 252(b)(1). The OCC determined that intraMTA traffic between an LEC and a CMRS was subject to the reciprocal compensation duty of 47 U.S.C. § 251(b)(5) even if the calls went through an intermediary IXC. That decision was affirmed by the U.S. District Court in Oklahoma and proceeded to the Tenth Circuit.

The Court of Appeals began by tracing the creation and codification of the FCC regulations implementing the reciprocal compensation duty of 47 U.S.C. § 251(b)(5). The Court noted that in its First Report and Order, "the FCC concluded that 'reciprocal compensation obligations should apply only to traffic that originates and terminates within a local area.'" *Atlas,* 400 F.3d at 1263 (quoting First Report and Order P 1034). The FCC left state commissions to define "local area" with regard to calls exchanged between one LEC and another, but for the purposes of calls between LEC and CMRS customers, the FCC defined "local area" as coterminous with the Major Trading Areas.

8

*Id.* Finally, the Court observed that the codified regulations governing "reciprocal compensation for transport and termination of telecommunications traffic" defined "transport" as

> the transmission and any necessary tandem switching of telecommunications traffic subject to section 251(b)(5) of the Act from the interconnection point between the two carriers to the terminating carrier's end office switch that directly serves the called party, or equivalent facility provided by a carrier other than an [ILEC].

*Atlas*, 400 F.3d at 1264 (quoting 47 C.F.R. § 51.701(c))(alteration by Tenth Circuit).

After concluding that the reciprocal compensation regulations were "clear, unambiguous, and on [their] face admit[] of no exceptions," the Tenth Circuit held that "[n]othing in the text of these provisions provides support for the [LECs'] contention that reciprocal compensation requirements do not apply when traffic is transported on an IXC network." *Id.* The Court reasoned that "[r]egulation 51.701(b)(1) specifically excludes from reciprocal compensation requirements landline traffic exchanged between a LEC and a non-CMRS carrier 'that is *interstate or intrastate exchange access*' in nature." *Id.* at 1265 (emphasis added by Tenth Circuit). It noted that the FCC chose not to carry forward that same exception into regulation 51.701(b)(2), which governs landline-to-wireless traffic between an LEC and a CMRS. *Id.* Instead, the second subsection applies the reciprocal compensation requirements to every landline-to-wireless call that, at the time it is made, "originates and terminates within the same Major Trading Area." 47 C.F.R. § 51.701(b)(2). Had the FCC intended to exempt intraMTA landline-to-wireless calls made through an IXC (and apply intrastate exchange access compensation to such

9

calls instead), it would have added the limiting language from section 51.701(b)(1) to section 51.701(b)(2). Since the FCC omitted the exception contained in the previous subsection, it must have intended no such exception for landline-to-wireless calls within the same MTA.

The *Atlas* decision is on all fours with the appeal currently pending before this Court. The Commission in the present case concluded that calls made by an LEC customer to a CMRS customer within the same MTA, whether connected directly from the LEC to the CMRS or indirectly through an IXC, were subject to reciprocal compensation requirements under the plain language of 47 U.S.C. § 251(b)(5) and 47 C.F.R. § 51.701(b)(2). That decision is in accord with the Tenth Circuit's reasoning in *Atlas,* which this Court finds persuasive. The same conclusion has been reached by other U.S. District Courts as well. *See, e.g.*, *WWC License, L.L.C. v. Boyle*, 2005 U.S. Dist. LEXIS 17201, 8-9 (D. Neb. 2005) ("reciprocal compensation obligations apply to all calls originated by Great Plains and terminated by Western Wireless within the same MTA, regardless of whether the calls are delivered via an intermediate carrier such as Qwest").

### B. FCC's First Report and Order

Rather than distinguishing *Atlas,* Plaintiffs argue that it was incorrectly decided and "devoid of any consideration of the statutes, rules, and FCC decisions indicating the FCC has not considered IXC traffic to be subject to reciprocal compensation." Pl. Sugg. in Supp. [Doc. # 18] at 39. They cite various paragraphs from the FCC's First Report and Order, 11 FCC Rcd 15499 (Aug. 8, 1996), as evidence that the FCC never intended

intraMTA landline-to-wireless calls connected through an IXC to be subject to reciprocal compensation. For example, Plaintiffs note that the FCC "preserves the legal distinctions between charges for transport and termination of local traffic and interstate and intrastate charges for termination of long-distance traffic." First Report and Order P 1033. They further cite the FCC's explanation of the difference between reciprocal compensation and access compensation:

> Access charges were developed to address a situation in which three carriers—typically, the originating LEC, the IXC, and the terminating LEC—collaborate to complete a long-distance call. As a general matter, in the access charge regime, the long-distance caller pays long distance charges to the IXC, and the IXC must pay both LECs for originating and terminating access service. By contrast, reciprocal compensation for transport and termination of calls is intended for a situation in which two carriers collaborate to complete a local call. In this case, the local caller pays charges to the originating carrier, and the originating carrier must compensate the terminating carrier for completing the call. This reading of the statute is confirmed by section 252(d)(2)(A)(I), which established the pricing standards for section 251(b)(5). Section 252(d)(2)(A)(I) provides for 'recovery by each carrier of costs associated with the transport and termination on each carrier's network facilities of calls that originate on the network facilities of the other carrier. We note that our conclusion that long distance traffic is not subject to the transport and termination provision of section 251does not in any way disrupt the ability of IXCs to terminate their interstate long-distance traffic on LEC networks. Pursuant to section 251(g), LECs must continue to offer tariffed interstate access services just as they did prior to enactment of the 1996 Act. We find that the reciprocal compensation provisions of section 251(b)(5) for transport and termination of traffic do not apply to the transport or termination of interstate or intrastate interexchange traffic.

*Id.* at P 1034. Plaintiffs argue that, because the wireless traffic at issue in the present case involves three parties (LEC, CMRS, and IXC) rather than just two (LEC and CMRS), it

11

constitutes a "long-distance" rather than "local" call and must be governed by access compensation rather than reciprocal compensation.

This argument might be persuasive were it not for the FCC's explanation of the difference between local and long-distance calls two paragraphs later:

> [I]n light of this Commission's exclusive authority to define the authorized license areas of wireless carriers, we will define the local service area for calls to or from a CMRS network for the purposes of applying reciprocal compensation obligations under section 251(b)(5). Different types of wireless carriers have different FCC-authorized licensed territories, the largest of which is the "Major Trading Area" (MTA). Because wireless licensed territories are federally authorized, and vary in size, we conclude that the largest FCC-authorized wireless license territory (i.e., MTA) serves as the most appropriate definition for local service area for CMRS traffic for purposes of reciprocal compensation under section 251(b)(5) as it avoids creating artificial distinctions between CMRS providers. Accordingly, traffic to or from a CMRS network that originates and terminates within the same MTA is subject to transport and termination rates under section 251(b)(5), rather than interstate and intrastate access charges.

*Id.* at P 1036. Reading these paragraphs together, the Tenth Circuit noted that, "Although in a preceding paragraph, . . . the FCC noted the continuing application of interstate and intrastate access charges in the context of landline communications, it omitted such language when referring to the CMRS communications. We will not ignore the clear distinction drawn by the agency." *Atlas,* 400 F.3d at 1266. Moreover, the FCC's definition of "Transport" as used in 47 U.S.C. § 251(b)(5) includes

> the transmission and any necessary tandem switching of telecommunications traffic subject to section 251(b)(5) of the Act from the interconnection point between the two carriers to the terminating carrier's end office switch that directly serves the called party, or equivalent facility provided by a carrier other than an [ILEC].

12

47 C.F.R. § 51.701(c). The addition of the phrase "or equivalent facility provided by a carrier other than an LEC" suggests that the involvement of an IXC in the connection of calls between LEC and CMRS customers does not negate the reciprocal compensation duty as long as the call originates and terminates within the same MTA. Contrary to the Plaintiffs' assertions, the *Atlas* court did consider the statutes, rules, and FCC decisions when it rejected the same arguments Plaintiffs raise in the present case.

In support of their position, Plaintiffs cite Paragraph 1043 of the FCC's First Report and Order which explains that "[u]nder our existing practice, most traffic between LECs and CMRS providers is not subject to interstate access charges unless it is carried by an IXC . . . ." Plaintiffs argue that this language indicates an exception to the reciprocal compensation obligation for all landline-to-wireless calls connected through an IXC. But Paragraph 1043 does not address reciprocal compensation. Nor does it say anything about calls between wireless and landline customers within the same state. Rather, Paragraph 1043 is exclusively about interstate access charges. It says that calls between landline and wireless customers in different states are not necessarily subject to interstate access charges unless the call is connected through an IXC. This is because the Major Trading Areas, many of which encompass more than one state, are what define which wireless calls are local and which are long-distance. For example, when a wireless customer in Kansas City, Missouri, calls a landline customer in Kansas City, Kansas, the call still originates and terminates within the same MTA and is considered a local call and not subject to interstate access charges. By contrast, when a wireless customer in Kansas

13

City, Kansas, calls a landline customer in Cheyenne, Wyoming, the call is most likely routed through an IXC and is therefore subject to interstate access charges. In short, Paragraph 1043 has no impact on intrastate calls or interstate calls originating and terminating within the same MTA. Such calls are instead governed by Paragraph 1036's provision that "traffic to or from a CMRS network that originates and terminates within the same MTA is subject to transport and termination rates under section 251(b)(5), rather than interstate and intrastate access charges."

## C. Remaining Arguments

Plaintiffs and their *Amici* raise several other cases[3] and arguments, but none is sufficient to overcome the plain language of 47 U.S.C. § 251(b)(5) and 47 C.F.R. § 51.701. In particular, they rely on language from the FCC's March 2005 Notice of Proposed Rulemaking ("NPRM"), 20 FCC Rcd 4685 (FCC 2005), as evidence that the current rules do not yet provide for reciprocal compensation where landline-to-wireless calls are connected through an IXC. For example, they quote the following language as

---

[3]For Example, Plaintiffs cite *Competitive Telecommunications Ass'n v. FCC*, 117 F.3d 1068, 1072 (8th Cir. 1997), to argue that the Eighth Circuit has already held that the FCC intended to keep access for IXC traffic separate and distinct from reciprocal compensation. However, this case involved the FCC's definition of "interconnection" as it appears in 47 U.S.C. § 251(c)(2). That section of the Act is not in dispute in the present case. The Commission rejected the applicability of *CompTel* for the same reasons. Arbitration Order at 17. Plaintiffs also cite the FCC's May 31, 2000, Memorandum and Order issued *In the Matter of TSR Wireless, LCC v. US West,* FCC 00-194. That case was considered and rejected by the Tenth Circuit in *Atlas*, 400 F.3d at 1267. Finally, Plaintiffs cite footnote 3 from this Court's August 24, 2005, Order in *VoiceStream PCS II Corp. v. BPS Telephone Co.*, Case. No. 05-4037-CV-C-NKL, which stated that "[a] call that originates from an MTA that does not correspond with a local telephone carrier's region is considered a "toll call" and a different system of compensation exists." *Voicestream* does not support Plaintiffs' argument. The cited footnote language only points out that wireless calls made or received from an MTA other than the one in which the other party's LEC is located are considered "toll calls." The Court's language in that case is in no way inconsistent with its present conclusion that intraMTA (local wireless) calls are subject to reciprocal compensation.

14

proof that all IXC connected calls are subject to access charges rather that reciprocal compensation:

> Federal and state access charge rules govern the payments that interexchange carriers (IXCs) and commercial mobile radio service (CMRS) providers make to local exchange carriers (LECs) that originate and terminate long-distance calls, while the reciprocal compensation rules established under section 251(b)(5) of the Act generally govern the compensation between telecommunications carriers for the transport and termination of calls not subject to access charges.

NPRM P 5, 20 FCC Rcd at 4687-4688. Plaintiffs overlook the qualifying phrase "long-distance calls." As explained at length above, "long-distance" in the context of CMRS wireless traffic means calls to or from somewhere outside the caller's MTA.

Plaintiffs also point to Paragraph 137, which provides:

> We also note that carriers have disagreed regarding the meaning of the existing intraMTA rule. Many rural LECs argue that intraMTA traffic between a rural LEC and a CMRS provider must be routed through an IXC and therefore is subject to access charges, rather than reciprocal compensation. CMRS providers, however, argue that all CMRS traffic that originates and terminates within a single MTA is subject to reciprocal compensation. In the event that we retain the rule and interpret its scope in the more limited fashion advocated by the rural LECs, should the rule be <u>changed</u> so that all intraMTA traffic to or from a CMRS provider is subject to reciprocal compensation? Under such an approach, would LECs be required to route all such intraMTA traffic to CMRS carriers rather than to IXCs, even if dialed on a 1+ basis? We seek comment on the relative merits and drawbacks of such an approach, and ask parties to identify any technical impediments to such routing requirements.

20 FCC Rcd at 4745-4746 (emphasis added by Plaintiffs). Plaintiffs suggest that the use of the phrase "should the rule be changed" implies that "all intraMTA traffic to or from a CMRS provider" is not currently subject to reciprocal compensation. However, the first part of the quoted sentence reads, "In the event that we retain the rule and interpret its

15

scope in the more limited fashion advocated by the rural LECs, should the rule be changed . . .?" This language suggests that the FCC has not yet interpreted the rule's scope "in the more limited fashion advocated by the rural LECs." Rather, the FCC is merely asking what would need to be done if it adopted that narrower interpretation advocated by the rural LECs.

The language Plaintiffs quote from the FCC's NPRM is ambiguous. The language of the FCC's already adopted regulations governing reciprocal compensation, 47 C.F.R. § 51.701(b)(2) is not. Perhaps after the FCC receives and compiles the comments to its Notice of Proposed Rulemaking, it will restructure the compensation regimes between the parties. Until then, however, the Court must consider the statutes and the rules presently before it. The plain language of 47 U.S.C. § 251 and 47 C.F.R. § 51.701 require telecommunications carriers to enter into reciprocal compensation agreements for the transport and termination of telecommunications traffic exchanged between an LEC and a CMRS provider that, at the beginning of the call, originates and terminates within the same Major Trading Area. There is no exception in either the statute or the regulations for intraMTA calls connected through an IXC.

Finally, Plaintiffs and their *Amici* argue that the Commission's Arbitration Report is at odds with some 90 previous arbitration decisions the Commission has made. It is unnecessary for the Court to consider whether and to what extent this is true, however, as state commissions are not the final interpreters of federal law. What matters in the present case is whether the Commission's current Arbitration Order is in accord with

federal law. The Court concludes that it is. The Commission's Arbitration Report is therefore affirmed.

**III. Conclusion**

Accordingly, it is hereby

ORDERED that Plaintiffs Motion for Summary Judgment [Doc. # 17] is DENIED, and it is

ORDERED that T-Mobile's Motion for Summary Judgment [Doc. # 20] is GRANTED.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: May 19, 2006
Jefferson City, Missouri